# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JAMES F. BEEDIE, *in his official capacity as trustee of* THE PALUMBO CHILDREN'S TRUST, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.   10-cv-1351 |
| ASSOCIATED BANK ILLINOIS, N.A., *doing business as* ASSOCIATED BANK, | ) ) ) | |
| Defendant. | ) ) | |

## O R D E R  &  O P I N I O N

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 1-1) and Memorandum in Support (Doc. 7), filed on December 6, 2010.  Plaintiff timely filed a Response to Defendant's Motion to Dismiss (Doc. 9).  For the following reasons, Defendant's Motion to Dismiss is GRANTED.

### BACKGROUND[1]

William Joseph Palumbo and Sue Frances Palumbo created the Palumbo Children's Trust (the Trust) on December 22, 1984, for the benefit of their children. (Doc. 1-1 ¶ 8).  At the time of the execution of the Trust Agreement and at all times thereafter, the Palumbos had a single child, their daughter Mia Anne Palumbo. (Doc. 1-1 ¶ 9).  Mia is presently 31 years of age and handicapped with severe epilepsy that cannot be controlled through medicine. (Doc. 1-1 ¶ 9).  She experiences

---

[1] Pursuant to the applicable standard of review, all facts discussed herein are taken from the Complaint and assumed true for the purposes of this motion.

seizures on a daily basis and routinely drops to the ground. (Doc. 1-1 ¶ 9). She has health care givers in her home that attend to her daily needs and protect her from physical harm resulting from her seizures and dropping episodes. (Doc. 1-1 ¶ 9). Proceeds from the Trust are and were intended to pay for Mia's costly and lifelong medical care. (Doc. 1-1 ¶ 10).

John Haeffele and Julianne Haeffele became co-trustees[2] and opened a checking account with First Financial Bank, now Associated Bank,[3] in the Trust's name on March 31, 1998. (Doc. 1-1 ¶ 14). Mr. and Mrs. Haeffele also had a personal checking account with this bank. (Doc. 1-1 ¶ 19). Associated Bank allowed John Haeffele to draw checks in his name from the Trust account and deposit them into his personal account. (Doc. 1-1 ¶¶ 23-24). He did so on at least 186 occasions, drawing funds from the Trust in the amount of $280,145.00. (Doc. 1-1 ¶ 26). Upon information and belief, Associated Bank allowed John Haeffele to take an additional $161,168.00 bringing the total to 441,313.00.[4] (Doc. 1-1 ¶¶ 27-28).

Plaintiff, James F. Beedie, in his official capacity as trustee of the Palumbo Children's Trust, now brings this suit against Defendant, Associated Bank Illinois, N.A., under the Uniform Commercial Code as adopted by Illinois Law.[5] Plaintiff

---

[2] At the time the Trust Agreement was executed in 1984, Robert B. Bailey was appointed as Trustee. Mr. Bailey was succeeded by James R. Peterson, who served as Trustee until 1998, when John and Julianne Haeffele were appointed as successor co-trustees. (Doc. 1-1 ¶11).

[3] At some point Associated bank acquired First Financial Bank. The entity will be referred to as Associated Bank for the remainder of this Order and Opinion.

[4] This Court recently sentenced John Haeffele in the criminal matter arising out of his actions.

[5] Defendant removed this case to federal court pursuant to 28 U.S.C. § 1332. (Doc. 1 ¶ 4). Defendant contends that the matter is between citizens of separate states and that the amount in controversy exceeds $75,000. (Doc. ¶ 5-6).

states claims for payment of unauthorized checks pursuant to 810 ILCS 5/4-401; conversion of instruments pursuant to 810 ILCS 5/3-420; claim to proceeds of instruments pursuant to 810 ILCS 5/3-306; and violation of Illinois Fiduciary Obligations Act (IFOA), 760 ILCS 65/1 *et seq.* Defendant believes it is shielded from all of Plaintiff's claims by the IFOA and therefore seeks to have them dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 7). Plaintiff has responded that the IFOA does not shield Defendant from liability because 1) the checks drawn by John Haeffele were not properly authorized; and 2) Defendant acted in bad faith. (Doc. 9).

## LEGAL STANDARD

In ruling on Rule 12(b)(6) motions, a court must construe the complaint in light most favorable to the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). To survive a motion to dismiss under 12(b)(6), factual allegations must raise a right to relief above the speculative level. *Bell Atlantic Corp v. Twombly*, 550 U.S. 554 (2007). In other words, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Hughes v. City of Peoria*, 2011 WL 284350, at *2 (C.D. Ill. January 24, 2011). Conclusory allegations are "not entitled to be assumed true." *Id.* A complaint must state sufficient factual matter, accepted as true, to "state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that defendant is liable for the misconduct alleged. *Id.*

# DISCUSSION

Plaintiff alleges the following facts in his Complaint: John Haeffele and Julianne Haeffele were appointed as co-trustees of the Palumbo Children's Trust in 1998 and served as such until July 2009. (Doc. 1-1 ¶ 11).  On March 31, 1998, John and Julianne Haeffele opened a checking account with Associated Bank in Peoria, Illinois on behalf of the Trust. (Doc. 1-1 ¶ 14).  At the time the Trust checking account was opened, Associated Bank required John Haeffele to present the Trust documents to it and he did. (Doc. 1-1 ¶ 15).  Pursuant to Colorado law, which was controlling according to the terms of the Trust Agreement, all checks drawn on the Trust checking account required the signature of both co-trustees in order to be properly authorized. (Doc 1-1 ¶ 18).

At all relevant times the Haeffeles also maintained a personal checking account with Associated Bank, a mortgage loan with Associated Bank, and another personal loan[6] from Associated Bank. (Doc. 1-1 ¶¶ 19-21).  After he was appointed co-trustee, John Haeffele began selling off Trust assets and depositing proceeds into the Trust's Associated Bank Account. (Doc. 1-1 ¶ 22).  John Haeffele wrote checks to himself drawn on the Trust checking account and deposited the checks into his and Julianne Haeffele's personal checking account with Associated Bank. (Doc. 1-1 ¶¶ 23-24).  Periodically, John Haeffele would receive cash at the time of these deposits. (Doc. 1-1 ¶¶ 24).  Once deposited, the Haeffeles made use of those funds for personal expenses unrelated to the Trust. (Doc. 1-1 ¶ 25).  Between August 2002 and July 2009, John Haeffele wrote checks to himself on at least 186 occasions totaling

---

[6] The purpose for this loan is unknown at this time. (Doc. 1-1 ¶ 21).

$280,145.00 and it is believed he did the same from 1999 through 2001 for an additional $161,168.00, for a total of $441,313.00. (Doc. 1-1 ¶¶ 26-28). Upon information and belief, John and/or Julianne Haeffele on multiple occasions wrote checks to Associated Bank for their mortgage payments after having deposited a check to their personal checking account that was drawn on the Trust account. (Doc. 1-1 ¶¶ 29). John and Julianne Haeffele were removed as co-trustees in July of 2009. (Doc. 1-1 ¶ 30).

## I.     The Fiduciary Obligations Act

Defendant's Motion Dismiss all counts of the Complaint is premised upon the contention that the Illinois Fiduciary Obligations Act (IFOA) governs the assignment of liability when a bank deals with a fiduciary acting in his fiduciary capacity, as the Haeffeles are said to have been doing in the Complaint. *See* 760 ILCS 65/1 *et seq.* "A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary . . . ." 760 ILCS 65/2. Section 9 of the statute goes on to include this protection against liability for a bank acting without actual knowledge of the fiduciary's breach of his duties:

> Notwithstanding any other law, if a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as a fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to

> pay the amount of the deposit or any part thereof upon
> the personal check of the fiduciary without being liable to
> the principal, unless the bank receives the deposit or pays
> the check with actual knowledge that the fiduciary is
> committing a breach of his obligation as fiduciary in
> making such deposit or in drawing such check, or with
> knowledge of such facts that its action in receiving the
> deposit or paying the check amounts to bad faith. 760
> ILCS 65/9.

As observed by the District Judge in *Crawford v. LaSalle Bank, N.A.*, 2010 WL 320299, at *6 (N.D. Ill. Jan. 21, 2010), "[t]he purpose of the IOFA is to facilitate banking and financial transactions and to shift the burden of employing honest fiduciaries to the principal and away from the banking institution." The statute is meant to limit liability to "relatively uncommon cases in which the person who deals with the fiduciary knows all the relevant facts." *Id*. The IFOA thus relieves banks of negligence liability and provides a defense for banks accused by principals of improper dealings with fiduciaries. *Id*. Section 9 of the IFOA has been interpreted to have a preclusive effect thereby preempting other state law and establishing a total defense to banks for all claims arising from a bank's honest interactions with fiduciaries. *See Johnson v. Citizens National Bank of Decatur*, 334 N.E.2d 295, 299-300 (Ill. App. Ct. 1995). Simply put, under Illinois law the IFOA provides a blanket defense to suit, exculpating banks from liability any time its provisions apply. *Crawford Supply Group*, 2010 WL 320299 at *9.

By its terms, the IFOA will bar Plaintiff's claims unless Plaintiff can show actual knowledge or bad faith on the part of Defendant. *See id*. at *6. Factual allegations must create the inference that any representative of Defendant had actual knowledge of the Haeffeles' malfeasance or that Defendant acted in bad faith

in its dealings with the Haeffeles. *See id.* Also, behavior on the part of Defendant that is so obvious or suspicious that it suggests Defendant colluded with the Haeffeles or otherwise acted unreasonably so as to assume liability for the Haeffeles' wrongdoing could amount to actual knowledge or bad faith. *See id.*

Accordingly, in deciding the Motion to Dismiss the Court is only required to decide if the Complaint alleges sufficient facts to show that defendant had actual knowledge of the Haffeles' malfeasance or had acted in bad faith in its dealings with them.

**A.     Insufficient Allegations of Actual Knowledge**

The Illinois Courts have defined "actual knowledge" as an "awareness at the moment of the transaction that its fiduciary is defrauding the principal" and as "having express factual information that funds are being used for private purposes that violate the fiduciary relationship." *Id.* at *6.

In the case at bar, Plaintiff alleges that Defendant had sufficient knowledge to know that the Haeffeles were not just "fiduciaries," but that they were co-trustees.  Plaintiff alleges that John and Julianne Haeffele opened a checking account together at Defendant's bank with an account owner's name of "Palumbo Children's Trust." (Doc. 9 at 5).  Plaintiff further states that John Haeffele provided Associated Bank's Deposit Agreement which indicated that the Haeffeles were acting as "fiduciaries" under the Trust Agreement provided to Associated Bank. (Doc. 9 at 5).  Plaintiff's contention is that it would be unreasonable for Defendant to not understand that the Haeffeles were co-trustees and view them as only "fiduciaries."  (Doc. 9 at 5).  What Defendant "should have known" is not what

matters, however. What matters under the IFOA is what Defendant actually knew. *Id.* at *7. The Trust Agreement (attached as to the Complaint as Exhibit A) does not mention the Haeffeles as co-trustees or even trustees for that matter. (Doc. 1-1 Exhibit A). Plaintiff also alleges that John Haeffele was not authorized to indorse checks himself pursuant to Colorado Law. (Doc. 9 at 3-4). However, if Defendant did not know that the Haeffeles were co-trustees, Defendant had no reason to require both John and Julianne Haeffele to sign checks drawn on the Trust account. Plaintiff has not pled enough facts to show that Defendant actually knew that the Haeffeles were co-trustees. The Complaint is also void of any allegations that Defendant knew or was legally obligated to ascertain the requirements of Colorado Law.

Illinois courts have consistently held that the deposit or transfer of money by a fiduciary into his personal accounts does not, without more, give rise to the inference that a bank had actual knowledge of wrongdoing or bad faith. *Id.* "Mere suspicious circumstances are not enough to require the bank to inquire into fiduciary's actions." *Id.* There are "many legitimate reasons why an agent and principal might engage in odd checking practices." *Id.* Likewise, there are many legitimate reasons why a fiduciary might frequently move large sums of money on behalf of the principal. *Id.*

Plaintiff alleges that on multiple accounts over a long period of time, John Haeffele was allowed to move large sums of money from the Trust account to his personal account (Doc. 9 at 8). Plaintiff would like this Court to find that these numerous transactions involving a substantial amount of money would put

Defendant on notice that John Haeffele was in violation of his fiduciary obligation. However, this is not enough. Plaintiff offers no basis for inferring that Defendant had "express factual information" or "actual awareness at the moment of the transactions" that the Haffeles were defrauding Plaintiffs. *Id*. at *8. Accordingly, this Court finds that Plaintiff has failed to adequately allege that Associated Bank had actual knowledge of the Haeffeles' malfeasance.

### B.    Insufficient Allegations of Bad Faith

Illinois courts have fleshed out the definition of bad faith by explaining that it includes situations "where the bank suspects the fiduciary is acting improperly and deliberately refrains from investigating in order that the bank may avoid knowledge that the fiduciary is acting improperly." *Crawford Supply Group*, 2010 WL 320299 at *8. When determining whether bad faith exists, courts consider whether it is "commercially unjustifiable for the payee to disregard and refuse to learn facts readily available." *Appley v. West*, 832 F.2d 1021, 1031 (7th Cir. 1987). At some point obvious circumstances become so cogent that it is "bad faith" to remain passive. *Id*.

In the case at bar, Plaintiff alleges: 1) the Haeffeles opened an account at Associated Bank in the name of the Trust, they presented the Trust documents to Associated Bank when the account was opened and Associated Bank's Deposit Agreement labels the Haeffele's as "fiduciaries" of the Palumbo Children's Trust; 2) the Haeffeles maintained their personal checking account and home mortgage with Associated Bank; 3) on information and belief, that in association with the home mortgage, Defendant possessed the Haeffeles' income tax returns and other

financial information; and 4) that John and/or Julianne Haeffele would pay their mortgage at Associated Bank immediately after John Haffele deposited funds from the Trust checking account into the Haeffeles' personal account. (Doc. 9 at 10-11).

It is not enough to establish bad faith that the bank could have discovered fraudulent activity merely because it had access to the fiduciary's financial information and handled other accounts for the fiduciary. *Mikrut v. First Bank of Oak Park*, 832 N.E.2d 376, 385-86 (Ill. App. Ct. 2005). Plaintiff has not pled enough facts to show that Defendant suspected the Haeffeles were acting improperly, nor has Plaintiff pled enough facts to show that Defendant deliberately refrained from investigating the Haffeles behavior. Plaintiff only pleads that Defendant should have or could have known based on the Haeffeles' activity and accounts they had with Defendant.

Plaintiff first relies on the 7th Circuit's ruling in *Appley* for the contention that he has pled sufficient facts to withstand a motion to dismiss. (Doc. 9 at 8-9). Plaintiff argues that based upon his allegations, "there is a legal theory on which the plaintiff can possibly recover," and the plaintiff "should be given the opportunity to proceed with discovery and to test his evidence before the trier of fact. *Appley*, 832 F.2d at 1031. However as, the *Crawford Supply Group* court noted, *Appley* predates the Supreme Court's decisions in *Twombly* and *Iqbal*, and therefore does not rescue the Complaint. *See Crawford Supply Group*, 2010 WL 320299 at *8. A "formulatic recitation" of the law is not enough to withstand a motion to dismiss. *Id.* Plaintiff must allege some factual content to support an inference that Associated Bank is liable for misconduct. *Id.*

Plaintiff also relies on the findings of the First District Appellate Court of Illinois in *Falk v. Northern Trust Co.*, 763 N.E.2d 380 (Ill. App. Ct. 2001) where the plaintiff sufficiently alleged bad faith by the bank by alleging: 1) a number of changes and irregularities in the plaintiff's account activity over a four year period; 2) the bank's acceptance of an unsigned check drawn on the plaintiff's account for payment of the assistant's personal credit line; and 3) its knowledge of the assistant's tax returns and other personal information, which was obtained by the bank in extending loans and personal credit to the assistant. (Doc. 9 at 9-10). However, in *Falk* the fact that the bank accepted checks drawn on the principal's account in payment of the fiduciary's personal debts owed to the bank was critical to finding bad faith. 763 N.E.2d at 387; *see also Crawford Supply Group* 2010 WL 320299 at *8. Plaintiff has not alleged this fact in the instant proceeding.

Further, the Complaint provides no basis for an inference that Associated Bank either suspected the Haeffeles of impropriety or "deliberately refrained from investigating" them. *See id.* at *9. Plaintiff does not allege that any employee of Associated Bank had a relationship with the Haeffeles. *See id.* Plaintiff does not allege that Associated Bank gave the Haeffeles any preferential treatment or assistance. *See id.* Finally, Plaintiff does not allege that Associated Bank derived any benefit as a result of the Haeffeles' behavior. *See id.* Accordingly, the Court finds that Plaintiff has failed to plead sufficient facts to establish that Defendant has acted in bad faith.

## CONCLUSION

For the foregoing reasons Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 7) is GRANTED and Plaintiff's Complaint (Doc. 1-1) is DISMISSED WITHOUT PREJUDICE because Plaintiff has failed to adequately plead either actual knowledge or bad faith on the part of Defendant, and his claims are therefore barred by the Illinois Fiduciary Obligations Act.  IT IS SO ORDERED.

Entered this <u>21st</u> day of June, 2011.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
